UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Polaris Experience, LLC,
d/b/a Polaris Adventures,

                                        Civ. No. 23-2843 (PAM/DTS)

                    Plaintiff,

v.                                      **MEMORANDUM AND ORDER**

3 Wheel Rentals Tampa LLC,
3 Wheel Rentals LLC, Michael Bobo,
and Reginald Bobo,

                    Defendants.

_____

        This matter is before the Court on Plaintiff Polaris Experience, LLC's Motion for a

Preliminary Injunction.[1]  (Docket No. 14.)  After receiving briefing from Plaintiff Polaris

Experience, LLC ("Polaris") and Defendant Reginald Bobo,[2] the Court held a hearing on

the Motion on September 21, 2023.  Defendants 3 Wheel Rentals Tampa LLC, 3 Wheel

Rentals LLC, and Michael Bobo have not entered an appearance in this matter.  As stated

at the hearing, and for the following reasons, the Court grants the Motion and enjoins

Defendants from auctioning, using, operating, or renting any Polaris vehicles.

        Defendants Michael Bobo and Reginald Bobo are the members, owners, and

_____

[1] Plaintiff styles its Motion as one for a temporary restraining order.  But because
Defendants have been notified of the Motion and had an opportunity to be heard, the Court
will treat the Motion as one for a preliminary injunction.  See Fed. R. Civ. P. 65(a)-(b).

[2] Defendant Reginald Bobo informed the Court that he is in the process of registering for
electronic filing access to the Court's electronic docket.  In light of the expedited nature of
this motion, he submitted his memorandum and exhibits to the Court via email.  The Court
expects Defendant Bobo to file the documents that he submitted on the docket as soon as
he gains access to do so.

operators of the Defendant companies.  (Compl. (Docket No. 1) ¶¶ 3-6.)  In 2019 and 2020, respectively, 3 Wheel Rentals, located in Michigan, and 3 Wheel Rentals Tampa entered the Polaris Adventures Program, which allows customers to rent Polaris Slingshots from third-party outfitters.  (Grube Decl. (Docket No. 18) Exs. 1, 2.)  The agreements dictated that Polaris provide vehicles for the company Defendants to rent to customers, and the Defendants agreed to pay fees, maintain the vehicles, comply with safety instructions, exclusively use the vehicles as part of the Polaris Adventures program, and return the vehicles when the contract term ends.  (Pl.'s Mem. in Supp. (Docket No. 16) at 2.)

Polaris claims that in April 2022, 3 Wheel Rentals began missing payments required under the agreement.  On August 16, 2022, Polaris sent letter to Reginald Bobo regarding that breach of contract and indicated that 3 Wheel Rentals had 45 days to pay the outstanding balances.  (Grube Decl. (Docket No. 17) Ex. 3.)  Defendants did not pay the balances, so on November 9, 2022, Polaris sent a letter to Reginald Bobo memorializing Polaris's decision to not renew its 2019 agreement with 3 Wheel Rentals.  (Id. Ex. 4).  Polaris asked 3 Wheel Rentals to pay all outstanding balances, make vehicles and vehicle trackers available to retrieve, and to return all Polaris hardware.  (Id.)

In November 2022, Polaris also sent a letter to Reginald Bobo regarding 3 Wheel Rentals Tampa's breach of the 2020 agreement for nonpayment of applicable fees.  (Id. Ex. 5.)  Polaris informed 3 Wheel Rentals Tampa that it had 30 days to cure the breach. (Id.)

Polaris maintains that it has made multiple unsuccessful attempts to contact Defendants to resolve this dispute.  On February 17 and 20, 2023, Polaris called and

emailed Reginald Bobo, with no response.  (Id. Ex. 6.)  A few days later, on February 23, 2023, three of Polaris's employees attempted to hand deliver a termination letter to 3 Wheel Rentals Tampa, but again no one was there.  (Id. ¶ 20.)  The next day, February 24, 2023, Polaris sent a letter to 3 Wheel Rentals Tampa terminating the agreement.  (Id. Ex. 7.)  In that letter, Polaris reminded 3 Wheel Rentals Tampa of its obligation to:  (1) pay outstanding invoices; (2) return the vehicles in condition relevant to mileage accumulated and make the vehicles available for pickup by March 1, 2023; (3) return all Polaris hardware by March 1, 2023; and (4) cease using all Polaris branding, trademarks, and marketing materials.  (Id.)

In roughly March 2023, Polaris learned that it continued to receive toll charges from 3 Wheel Rentals Tampa's use of Florida toll roads.  (Id. ¶ 24; Pl.'s Mem. in Supp. at 7.) On May 31, 2023, Polaris sent 3 Wheel Rentals Tampa a letter demanding that it cease using and renting Polaris's vehicles, secure the vehicles, and make every effort to return them to Polaris, as well as to remove all Polaris trademarks, branding, and marketing materials from its website.  (Grube Decl. Ex 10.)  On June 2, 2023, then-counsel for 3 Wheel Rentals Tampa responded and acknowledged the February 24 letter, claiming that 3 Wheel Rentals Tampa had made vehicles available for pickup since March 1, 2023.  (Id. Ex. 11.)

Additionally, Polaris asserts that 3 Wheel Rentals also continues to use the vehicles in Michigan, because some vehicles' trackers indicate as much.  (Id. ¶ 27.)  Thus, on June 20, 2023, Polaris demanded that 3 Wheel Rentals also cease and desist operating Polaris's vehicles.  (Compl. ¶ 26, Grube Decl. Ex. J.)  On March 13, 2023, a vehicle rented by 3

Wheel Rentals was involved in an accident resulting in an injury.  (Grube Decl. ¶¶ 25, 28; id. Exs. 8, 12.)  Polaris contends that the renter did not use Polaris's digital check-in software, which ostensibly would have instructed the renter on how to safely operate the vehicles.

Currently, 3 Wheel Rentals Tampa possesses 13 Polaris vehicles and 3 Wheel Rentals possesses 33 Polaris vehicles.  (Id. ¶ 15.)  On August 22, 2023, Polaris received notice that Defendant 3 Wheel Rentals Tampa intends to auction off "at least four" vehicles on September 25.  (Pl.'s Mem. in Supp. at 10; Grube Decl. ¶ 36; id. Ex. 15.)  Defendant Reginald Bobo claims that Defendants "had no choice but to continue renting the old season Slingshots to the public to try and mitigate the losses from storing the old units and not having new units to provide to the customers as other similar outfitters had access to."  (Def.'s Opp'n Mem. at 2.)  He further contends that because it costs $350 to store an out-of-season vehicle, 3 Wheel Rentals Tampa was essentially forced to seek relief under Florida's warehouseman lien statute and arrange for some of the vehicles to be auctioned.  (Id. at 3, 6.)

Polaris moves for a preliminary injunction asking the Court to bar Defendants from using, operating, renting, or auctioning the vehicles, and to require to that Defendants cease using Polaris' trademarks.

**DISCUSSION**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  When deciding whether to issue a preliminary injunction,

courts consider four factors: (1) the threat of irreparable harm to the movant; (2) the balance of harm the injunction would have on the movant and the opposing party; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). While no factor is dispositive, "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013) (quotation omitted).

**A.      Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits, Polaris must establish that it has a "fair chance of prevailing" on those claims. Planned Parenthood of Minn., N. Dak., S. Dak. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). This standard does not require "the party seeking relief [to] show 'a greater than fifty percent likelihood that [it] will prevail on the merits.'" Id. at 731 (quoting Dataphase, 640 F.2d at 113). And if the other three factors "tip[] decidedly toward" the moving party, then "a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase, 640 F.2d at 113.

**1.      Breach-of-Contract Claim**

The elements of a breach-of-contract claim are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." Park Nicollet

Clinic v. Hamann, 808 N.W.2d 828, 833 (Minn. 2011).[3]  Polaris has submitted sufficient evidence to show that it will likely prevail on its claim that Defendants breached the contract by failing to pay money due under the agreements.  (Pl.'s Mem. in Supp. at 14.)  Polaris has also demonstrated that Defendants have likely breached the contract because the Defendant companies continue to use Polaris's mark on their websites, despite that the agreements have terminated.  (Id.)

### 2.    Conversion Claim

Under Minnesota law, a claim for conversion requires a plaintiff to prove that he holds a property interest and that the defendant deprived him of that interest.  Olson v. Moorhead Country Club, 568 N.W.2d 871, 872 (Minn. Ct. App. 1997).  Polaris provides sufficient evidence to demonstrate that it is likely to succeed on the merits of its conversion claim because Defendants are depriving Polaris of its property interest in the vehicles.

### 3.    Trademark Claim

Polaris alleges that Defendants continue to infringe on Polaris's trademark, which is currently displayed on Defendants' websites.  (Compl. ¶¶ 46-47.)  "To demonstrate a probability of success on the merits of its statutory trademark infringement claim, [Polaris] must prove ownership of a valid trademark and a likelihood that consumers would confuse the infringing mark with the registered mark."  Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1128 (D. Minn. 1996) (Tunheim, J.).  Polaris has a valid trademark in the Polaris Adventures name and Polaris logo, and has evidence that

---

[3] The parties' agreements dictate that Minesota law governs, and there is no dispute as to choice of law.  (Grube Decl. Ex. 1 at § 17, Ex. 2 § 20A.)

Defendants continue to display and use that trademark without Polaris's permission, so that consumers might believe that Defendants are authorized Polaris retailers. Polaris has therefore demonstrated that it is likely to succeed on the merits of trademark claim.

### 4. Civil-Theft Claim

Polaris alleges that Defendants impermissibly continue to possess Polaris vehicles after the agreements have terminated, and Defendants present no contrary evidence. A claim for civil theft requires a plaintiff to establish that the defendant stole its property. Minn. Stat. § 604.14, subd. 1. Although the statute does not define "steal", Minnesota courts have defined "steal" as "that a person wrongfully and surreptitiously takes another person's property for the purpose of keeping it or using it." TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC, 890 N.W.2d 423, 431 (Minn. Ct. App. 2017). Polaris has shown that it is likely to succeed on this claim because Defendants do not dispute their intention to auction some of Polaris's vehicles thereby permanently depriving Polaris of its property, and Polaris has established that it is likely to succeed on the merits of this claim.

### B. Irreparable Harm

"Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm." Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 706 (8th Cir. 2011). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). Irreparable harm is harm that is "certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils.

Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 2006). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

Polaris argues that irreparable harm has occurred because Defendants' actions have led the public to mistakenly believe that Defendants continue to be associated with Polaris. (Pl.'s Mem. in Supp. at 12.) "Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [Polaris] can demonstrate a likelihood of consumer confusion." Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987). "Reputational harm and damage to goodwill are difficult to quantify and monetary damages are generally inadequate to compensate such injuries." Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc., 103 F. Supp. 3d 1032, 1047-48 (D. Minn. 2015) (Montgomery, J.) (citing Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003)). Because Defendants continue to use Polaris's marks and consumers are likely to be confused by that continued use, Polaris has demonstrated irreparable harm to support the issuance of an injunction.

## C.      Balance of Harms

The Court finds that the balance of harms favors Polaris, because "[t]he injunction does nothing more than prohibit [Defendants] from doing what [they have] already agreed not to do, so [they] will not be harmed by it." Piper Sandler & Co. v. Gonzalez, No. 23cv2281, 2023 WL 5426000, at *3 (D. Minn. Aug. 23, 2023) (Schiltz, C.J.).

## D.      Public Interest

Polaris claims that the public interest supports issuance of a preliminary injunction

against Defendants in order to protect property rights in both the vehicles and Polaris's intellectual property. "This Court has repeatedly recognized that the public interest is promoted by preventing customer confusion and infringement of trademarks." Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC, 829 F. Supp. 2d 836, 847 (D. Minn. 2011) (Kyle, J.) (quotation omitted). Similarly, the public interest is furthered "by protecting freedom to contract through the enforcement of contractual rights and obligations." PCTV Gold, Inc. v. SpeedNet, LLC., 508 F.3d 1137, 1145 (8th Cir. 2007). Polaris has demonstrated that the public interest weighs in favor of issuing an injunction.

Accordingly, **IT IS HEREBY ORDERED that**:

1.  Polaris's Motion for a Preliminary Injunction (Docket No. 14) is **GRANTED**;

2.  Defendants are **ENJOINED** from auctioning, using, operating, or renting any Polaris vehicles;

3.  Defendants are further **ENJOINED** from any use of Polaris's trademark;

4.  Within ten days from the date of this Order, Defendants shall make all of the Polaris vehicles in their possession available to Polaris and Polaris shall retrieve those vehicles from Defendants' possession within five business days thereafter. Defendants shall bear all costs related to that storage; and

5.  Under Fed. R. Civ. P. 65(c), to secure the issuance of this injunction, Polaris shall post a bond in the amount of $100,000 to secure the preliminary injunction within five business days from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 23, 2023                    *s/ Paul Magnuson*

Paul A. Magnuson
United States District Court Judge